## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JUSTIN STEELE,

        Plaintiff,

    v.

DOCKER, INC.,

        Defendant.

Civil Action No. 24-538-RGA

### MEMORANDUM ORDER

Before me is Defendant' Motion to Compel Arbitration and Stay Proceedings. (D.I. 15). I have considered the parties' briefing. (D.I. 16, 20, 23, 28, 30). For the reasons set forth below, the motion is GRANTED.

## I.    BACKGROUND

In 2008, Plaintiff Justin Steele founded a company called InfoSiftr, which "specialized in container images and registries to help software developers ship applications with increased velocity, agility, and security." (D.I. 2 ¶ 9). In 2022, Defendant Docker's CEO, Scott Johnston, contacted Steele about Docker acquiring InfoSiftr. (*Id.* ¶ 12). Docker subsequently acquired InfoSiftr. (*Id.* ¶ 43). The parties executed several agreements pursuant to the acquisition, the contents and breadth of which are at issue for this motion to compel arbitration.

On February 4, 2022, Johnston and Steele, on behalf of their respective companies, executed the "Term Sheet," which summarized the terms for Docker's acquisition of InfoSiftr. (*Id.* ¶ 13).

On March 31, 2022, all parties to the acquisition, including Steele, executed the "Purchase Agreement." (*Id.* ¶ 16). The Purchase Agreement contains a choice of law and forum

1

selection clause, selecting Delaware as the venue and controlling law "in connection with any matter based upon or arising out of [the Purchase Agreement] or the Transactions." (D.I. 16 at 15; D.I. 2-2 at 37 of 62).

The same day, Docker delivered an "Offer Letter" to Steele, offering him the position of general manager of the InfoSiftr team at Docker. (D.I. 2 ¶¶ 23, 25; D.I. 16 at 4). The Offer Letter states, "As a condition of your employment, you are also required to sign and comply with our standard agreement that includes: At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement." (D.I. 2-2 at 54 of 62).

"In conjunction with the Purchase Agreement," Steele and Docker executed the "Earn Out Agreement," which was "effective [March 31, 2022]."[1] (D.I. 2 ¶¶ 16, 31; D.I. 4 at 6 of 11). The Earn Out Agreement provided certain financial benefits to Steele for staying on board through the transition period if Docker performed well. (D.I. 4 at 6 of 11). The Earn Out Agreement says nothing about arbitration, and it says it is governed by California law. (D.I. 17-2 at 2, 6 of 6).

---

[1] I am unsure of the exact date the parties executed the Earn Out Agreement. Steele attached the Earn Out Agreement as an exhibit to his complaint, which includes a signature page at the end, with Steele's signature dated March 29, 2023, a year after the acquisition was finalized. (D.I. 4 at 11 of 11). I do not think that is the signature page for the Earn Out Agreement. The signature page contains text that does not line up with the page preceding it, and contains a different sectioning scheme. (*Id.* at 10–11 of 11). I am unsure why the signature page, which seems to be from a later-signed Commission Agreement (D.I. 2-3), was included at the end of Steele's exhibit. I additionally note that Steele's submission, while labeled "Execution Version," is a template. There are five "notes to draft" in his version. (D.I. 4 at 7 of 11). In the Earn Out Agreement submitted by Docker, there is no signature page. (D.I. 17-2). It is labeled "Exhibit A to Justin Steele Offer Letter," and the "notes to draft" have been removed because other blanks have been filled in. (*Id.* at 2–3 of 6). Regardless, the parties do not dispute that the Earn Out Agreement was properly agreed to, and the precise date it was signed does not seem to matter to the parties.

2

The Earn Out Agreement was originally drafted to be part of the Purchase Agreement. (D.I. 23 at 1).  On March 7, 2022, Steele (either himself or through his attorneys) sent a revised Purchase Agreement to Docker, deleting all earn out provisions from the draft Purchase Agreement.  (*Id.* at 1–2).  Steele's attorney included a note that said, "Earnout to be moved to employment agreement."  (*Id.* at 2).  A week later, Docker's counsel sent Steele's counsel further revisions, stating, "Also noting that we are in the process of preparing a standalone earnout document that will be attached as an addendum to the employment agreements."  (*Id.*).

Docker claims the Earn Out Agreement was included as an attachment to Steele's Offer Letter.  (D.I. 16 at 13).  Docker cites an exhibit of the Earn Out Agreement it attached to its brief, which bears the title "Exhibit A to Justin Steele Offer Letter."  (D.I. 17-2 at 2 of 6).  Steele claims the Earn Out Agreement was not attached to the Offer Letter signed by Steele.  (D.I. 20 at 6).  In the Earn Out Agreement attached as an exhibit by Steele, the agreement does not have "Exhibit A to Justin Steele Offer Letter" as part of its title.  (D.I. 4 at 6 of 11).

On April 1, 2022, Steele's first day of employment with Docker, Steele signed the "At-Will Employment Agreement," as required by the Offer Letter.  (D.I. 16 at 4).  The At-Will Employment Agreement included an arbitration clause requiring arbitration of claims "arising out of, relating to, or resulting from [Steele's] employment or relationship with [Docker] or the termination of [Steele's] employment or relationship with [Docker]."  (*Id.*).

About a year later, on March 29, 2023, Steele and Docker signed a "Commission Plan,"[2] which detailed commissions Steele could earn in connection to sales.  (D.I. 2 ¶ 66; D.I. 2-3).

---

[2] The document is actually titled, "Docker Sales Compensation Plan."  (D.I. 2-3 at 2 of 8).  It has a California choice of law provision for U.S.-based employees.  (*Id.* at 8 of 8). It does not have an arbitration provision.

3

On April 13, 2023, Docker terminated Steele's employment. (D.I. 2 ¶ 86). Steele believes that he was on track to receive substantial compensation pursuant to the Earn Out Agreement. (*Id.* ¶ 93). After Steele was terminated, Docker told him that the Commission Plan superseded the Earn Out Agreement, prompting Steele to file the instant lawsuit. (*Id.* ¶ 96).

On March 4, 2024, Steele initiated arbitration proceedings in California against Docker, incorporating many of the same factual allegations he alleges in this action. (D.I. 16 at 7–8).

Steele filed this complaint against Docker on May 2, 2024. It contains six counts: (1) declaratory judgment that the Commission Plan does not supersede the Earn Out Agreement and other contracts between Steele and Docker; (2) breach of the Earn Out Agreement; (3) breach of the Earn Out Agreement's implied covenant of good faith and fair dealing; (4) breach of the Purchase Agreement's implied covenant of good faith and fair dealing; (5) fraudulent inducement relating to Steele's acceptance of the Commission Plan; and (6) unjust enrichment. (D.I. 2 ¶¶ 98–181).

Docker alleges the claims are largely duplicative of the ones Steele alleges in the California arbitration. (D.I. 16 at 7–8). Steele disagrees, alleging the California arbitration is based on claims arising from Steele's Offer Letter, while this action is based on claims arising out of the Purchase Agreement, Earn Out Agreement, and Commission Plan. (*Id.*; D.I. 20 at 9–10).

## II.    LEGAL STANDARD

For a court to compel arbitration, it "must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

4

The standard to determine whether to grant a motion to compel arbitration depends on the record in the case. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). On the one hand, a Rule 12(b)(6) motion to dismiss standard applies "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Id.* (internal citations omitted); *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 325 (3d Cir. 2022) (explaining that, under the Rule 12(b)(6) standard for evaluating a motion to compel arbitration, "we look to the complaint and the documents on which it relies and will compel arbitration only if it is clear, when read in the light most favorable to the respondents, that the parties agreed to arbitrate"). On the other hand, if the complaint is unclear regarding an agreement to arbitrate or if the non-moving party presents sufficient facts to place an agreement to arbitrate into issue, then the parties may conduct "limited discovery" and submit further briefing, which will be reviewed under a Rule 56 summary judgment standard. *Guidotti*, 716 F.3d at 776. This limited discovery is available only when warranted; that is, if there is a genuine dispute of material fact. *Young v. Experian Info. Sols.*, 119 F.4th 314, 319–20 (3d Cir. 2024). If the issue of arbitrability cannot be resolved using the summary judgment standard, then the court should have a trial on the issue. *Guidotti*, 716 F.3d at 776.

"[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1377 (3d Cir. 1993). "In determining if parties have agreed to arbitrate, [courts] apply ordinary

state-law principles that govern the formation of contracts." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010).

### III.    DISCUSSION

The parties do not dispute that Steele's At-Will Employment agreement has a valid arbitration clause. They do dispute whether the agreement to arbitrate is part of, and thus applies to claims arising out of, the Earn Out Agreement.

Steele argues the Earn Out Agreement is not subject to arbitration because the Earn Out Agreement was not attached to the Offer Letter signed by Steele. (D.I. 20 at 11). Steele argues the Earn Out Agreement was bargained for as part of the Purchase Agreement, which contains a forum selection and choice of law clause, pointing to language in the Earn Out Agreement that refers to the Purchase Agreement. (*Id.* at 13, 15–16). Steele argues that the fact he initiated an arbitration proceeding does not mean claims in this action should also be subject to arbitration; he argues his arbitration claims concern the Offer Letter and these claims concern the Purchase Agreement. (*Id.* at 9, 13).

Docker argues that the arbitration agreement requires the parties to arbitrate any disputes arising out of or relating to Steele's employment with Docker, and all of the counts here arise out of Steele's employment with Docker. (D.I. 16 at 9, 11–14). Docker points out that Steele's counsel asked, during finalization of the agreements, to move the earn out provisions "to [the] employment agreement," to which Docker's counsel responded that the Earn Out Agreement would "be attached as an addendum to the employment agreements." (D.I. 23 at 2). Docker argues this shows both parties' intent to include the Earn Out Agreement as part of Steele's employment agreement, and thus to make it subject to arbitration. (*Id.*). Docker argues that the

6

currently pending arbitration claims filed by Steele are substantially the same as the claims alleged here, all arising out of his employment with Docker. (D.I. 16 at 1).

The first issue, not briefed by the parties, is which standard I should use to decide this motion. I think the Rule 56 motion for summary judgment standard applies. The standard applies in two instances: when the complaint does not clearly show the claims are subject to an arbitration agreement, or if the party opposing the motion to compel arbitration produces reliable evidence that it did not intend to be bound by the arbitration agreement. *Young*, 119 F.4th at 319. Steele attached the form Offer Letter to his complaint, which contains the requirement that Steele must sign the arbitration agreement. (D.I. 2-2 at 54 of 62). I do not think it is apparent from the face of the complaint that the claims, based on the Earn Out Agreement, are subject to arbitration. I think this lack of clarity warrants application of the Rule 56 standard.

Though the Rule 56 standard applies, I think that further discovery is not warranted. The parties did not ask for any discovery on the issue. During briefing, the parties attached various exhibits, none of which are challenged. The Third Circuit recently clarified that, even when a Rule 56 standard applies, discovery is not mandatory. *Young*, 119 F.4th at 319.

I will view the motion under the Rule 56 motion for summary judgment standard, granting the motion only if there are no genuine disputes of material fact and Docker is entitled to the motion being granted as a matter of law. FED. R. CIV. P. 56(a).

I think there are not genuine disputes of material fact here. Steele does not dispute that he agreed in his Offer Letter to the arbitration of disputes arising out of or related to his employment with Docker. Steele asked Docker, through their attorneys, to move the Earn Out Agreement to be part of the employment agreement. (D.I. 23 at 2). Steele does not dispute this. Steele asserts there was no meeting of the minds with respect to the Earn Out Agreement being

subject to the arbitration provision, pointing out that the Earn Out Agreement was not attached to his signed offer letter. (D.I. 28 at 1). Docker does not seem to dispute that the signed version of the Offer Letter does not contain the Earn Out Agreement. Docker alleges that the parties intended the Earn Out Agreement to be attached to Steele's offer letter; Steele disagrees. (D.I. 23 at 1; D.I. 28 at 1). I do not think that dispute renders summary judgment inappropriate because it is not material.

"Delaware law holds that where a contract incorporates another contract by reference, the two contracts will be read together as a single contract." *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012). When one agreement is "part and parcel of a larger contractual relationship," that agreement "must be understood within the context of that larger legal framework." *CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *47 (Del. Ch. Dec. 7, 2009). The Term Sheet, executed by Johnston and Steele on behalf of Docker and InfoSiftr, respectively, references the Purchase Agreement, Offer Letter, and Earn Out Agreement. (D.I. 2 ¶ 14). The Purchase Agreement references the Offer Letter. (D.I. 2-2 at 4 of 62). Whether the Earn Out Agreement was attached to Steele's Offer Letter is of no moment. The contracts must be read together, in the context of the greater legal relationship between the parties.

In deciding whether Steele's complaint falls within the scope of the parties' arbitration agreement, I must "focus on the factual underpinnings of the claim rather than the legal theory alleged in the complaint" to "prevent a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) (cleaned up).

Steele does not dispute the validity of the arbitration agreement or its contents. The agreement says Steele agrees "to arbitrate all employment-related disputes," meaning any claims

"arising out of, relating to, or resulting from [Steele's] employment or relationship with [Docker]." (D.I. 17-1 at 9 of 18). All of Steele's counts alleged in his complaint arise out of or relate to his employment with Docker, and they are thus all subject to arbitration.

In Count I, Steele seeks a declaratory judgment that the Commission Plan does not supersede the Earn Out Agreement, or other related contracts between Steele and Docker. (D.I. 2 ¶¶ 98–120). Steele does not argue disputes about the Commission Plan are not subject to arbitration. Steele puts forth the various provisions in both agreements, including how payments and bonuses to Steele are calculated under the agreements. (*Id.* ¶¶ 101, 106–09). The disputes underlying the request for a declaratory judgment relate to and arise out of Steele's employment with Docker.

In Count II, Steele alleges breach of the Earn Out Agreement. (*Id.* ¶¶ 121–26). Steele alleges he performed his obligations under the Earn Out Agreement and Docker has not. (*Id.*). Steele was to be paid certain sums under the Earn Out Agreement should he remain employed by Docker and contribute to Docker's success. (D.I. 4 at 7–8 of 11). Incentivizing high quality work relates to and arises out of Steele's employment. I do not need to rely upon extrinsic evidence to reach this conclusion. Nevertheless, to the extent there is any ambiguity, this conclusion is supported by Steele's request that the Earn Out Agreement be considered part of the "employment agreement," as opposed to the Purchase Agreement. (D.I. 23 at 2); *see Salamone v. Gorman*, 106 A.3d 354, 374 (Del. 2014) ("When a contract's plain meaning, in the context of the overall structure of the contract, is susceptible to more than one reasonable interpretation, courts may consider extrinsic evidence to resolve the ambiguity.").

In Count III, Steele alleges breach of the Earn Out Agreement's implied covenant of good faith and fair dealing. (D.I. 2 ¶¶ 127–39). Steele points to actions taken by Docker after

Steele started working, including splitting up Steele's team and terminating Steele's employment. (*Id.* ¶¶ 133, 136). These actions relate to and arise out of Steele's employment with Docker. While true that Steele includes the allegation that Docker deprived Steele of the benefit of the bargain made when Steele sold InfoSiftr to Docker, the basis for that allegation are actions relating to or arising out of Steele's employment with Docker. Doubts should be resolved in favor of arbitrability. *Painewebber*, 984 F.2d at 1377. Delaware courts interpret arbitration clauses broadly. *Coronado Coal II, LLC v. Blackhawk Land & Res., LLC*, 2023 WL 2339583, at *3 (Del. Mar. 3, 2023). As set forth above, I think the Earn Out Agreement itself arises out of and relates to Steele's employment with Docker. That, combined with the factual allegations of Docker's conduct after Steele started working, render Count III as arising out of Steele's employment with Docker.

In Count IV, Steele alleges breach of the Purchase Agreement's implied covenant of good faith and fair dealing. (D.I. 2 ¶¶ 140–51). Steele points to substantially the same facts as he does in Count III. (*Id.*). Though the claim is labelled as a breach of the Purchase Agreement, the claim relates to Steele's employment and is thus subject to arbitration. Steele alleges Docker split up his team, intentionally sought to undermine his team's success, attempted to reduce earn out payments, and terminated Steele wrongfully. (*Id.* ¶¶ 144–48). These factual allegations all relate to Steele's employment with Docker. Though Steele also includes allegations that Docker deprived Steele of the benefit of the bargain made when Steele sold InfoSiftr to Docker, for the same reasons I set forth in relation to Count III, I think the factual allegations underpinning the claim arise out of and relate to Steele's employment with Docker.

In Count V, Steele pleads in the alternative that unnamed individuals at Docker fraudulently induced him to agree to the Commission Plan. (*Id.* ¶¶ 152–64). Steele alleges

Docker pressured him to accept less-desirable compensation and made false representations to induce Steele to sign the Commission Plan. (*Id.*). This arises out of Steele's employment with Docker.

In Count VI, Steele alleges unjust enrichment, alleging Docker unjustly gained benefit from Steele when he transferred his shares in InfoSiftr and provided valuable labor to Docker. (*Id.* ¶¶ 165–81). Though part of this claim alleges conduct dealing with the sale of InfoSiftr, much of it also relates to Steele's employment with Docker. This claim thus also relates to Steele's employment with Docker.

That the Purchase Agreement contains a choice of law and forum clause selecting Delaware does not mean arbitration is not allowed under the agreements. That clause does not preclude arbitration for claims arising out of employment. (D.I. 2-2 at 37 of 62). The clause selects the laws and forum of Delaware "in connection with any matter based upon or arising out of this Agreement or the Transaction." (*Id.*). Parties can agree to arbitrate some issues and not others. *See Kirleis*, 560 F.3d at 160 (requiring courts to determine whether an asserted claim falls within the scope of parties' arbitration agreement). The arbitration agreement applies only to disputes arising out of and relating to Steele's employment with Docker. (D.I. 16 at 4). That there is a forum selection clause applying to the Purchase Agreement and sale of InfoSiftr to Docker has no bearing on the application of arbitration to employment-related disputes.

Finally, in his answering brief, Steele moved to strike certain arguments in Docker's opening brief about Steele's purported behavior while employed by Docker. (D.I. 20 at 19–20). Docker made no response. I assume the request is undisputed, and I grant it. The statements were immaterial to Docker's motion to compel arbitration, and, in any event, they were unsupported by a declaration or affidavit.

11

The motion to compel arbitration and stay proceedings (D.I. 15) is GRANTED.  The offending paragraph in Docker's brief (D.I. 16 at 7, following the heading, "Human Resources Issues with Steele") is STRUCK.

IT IS SO ORDERED.

Entered this ____ day of March, 2025

_____
United States District Judge

12